The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim Cramer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant to the issues before the Full Commission, the employee-employer relationship existed between plaintiff Ray Richardson and defendant China Inn.
3. Plaintiff sustained an admittedly compensable injury by accident on or about November 10, 1992.
4. Plaintiff's average weekly wage at the time of his injury by accident was $88.00.
5. Although no Form 21 agreement has been entered, the carrier has paid benefits to the plaintiff from the date of the accident until the date of hearing before the Deputy Commissioner.
6. The issues are whether the plaintiff has been disabled since June, 1993 and whether plaintiff should be authorized to seek additional medical treatment from Dr. Theodore M. Pitts.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction of this claim, all parties being properly before the Commission and subject to and bound by the North Carolina Workers' Compensation Act.
2. Plaintiff was born on October 30, 1975. On the date of the hearing before the Deputy Commissioner, he was a senior at Northern Nash Senior High School.
3. Plaintiff's average weekly wage of $88.00 yields a compensation rate of $58.67.
4. In addition to attending high school, plaintiff worked at China Inn. His duties included dish washing, putting up stock and mopping the floors. On November 10, 1992, as he was mopping the floor, his feet slipped and he fell backwards landing on the concrete floor in the cooking area. Plaintiff's back "locked" and he could not move.
5. Plaintiff was taken to the emergency room at Nash General Hospital in Rocky Mount. X-rays were taken and he was given pain medications and relieved from work for 3 days.
6. Plaintiff was referred to Dr. A. H. Marsigli, an orthopedic specialist, at Nash Orthopedic Associates. He first saw Dr. A. H. Marsigli on November 17, 1992. Dr. Marsigli reviewed the x-rays which showed mild scoliosis as well as partial lumbarization of S1 and some Schmorl's nodes in the thoracic spine area. No fractions or dislocations were noted. Dr. Marsigli assessed low back derangement and gave plaintiff some exercises to do and sent him to Physical Therapy. Since Dr. Marsigli could not find anything clinically wrong with plaintiff, he advised plaintiff he could go back to work the next day.
7. Plaintiff was seen again by Dr. A. H. Marsigli on December 7, 1992 with complaints that he was no better. Dr. Marsigli ordered an MRI. However, plaintiff was late for the MRI therefore it was not performed as scheduled. Dr. Marsigli did not see plaintiff again until March 29, 1993.
8. On January 12, 1993, plaintiff, on his own, went to see Dr. C. Robert Lincoln of Durham-Chapel Hill Orthopedic Associates. Plaintiff's aunt had told him about Dr. Lincoln. Plaintiff complained of pain in his low back with some paresthesias into the right leg and left shoulder. He told Dr. Lincoln about his fall at work on November 10, 1992. Dr. Lincoln noted full range of motion in the shoulders, elbows, wrist and fingers, and no impingement, neurologically intact. He ordered an MRI.
9. The MRI was within normal limits, therefore on February 16, 1993, Dr. Lincoln ordered a three-phase bone scan. The bone scan was unremarkable, and when Dr. Lincoln saw plaintiff again on March 9, 1993 he discussed this with him. Dr. Lincoln discharged plaintiff with no permanent physical impairment. Dr. Lincoln did not take plaintiff out of work.
10. Plaintiff returned to Dr. A. H. Marsigli on March 29, 1993. After reviewing the MRI results, Dr. Marsigli suspected a possible stress fracture at the second lumbar vertebra. Dr. Marsigli ordered a molded brace for plaintiff.
11. Dr. A. H. Marsigli saw plaintiff again on June 11, 1993 at which time plaintiff continued to complain of pain. However, on that date Dr. Marsigli noted that the bone scan was negative. He released plaintiff to return to work on June 21, 1993. Plaintiff was to limit his lifting to 50 pounds for two months, and thereafter return to his regular duties.
12. Plaintiff returned to Nash Orthopedic Associates on September 20, 1993, at which time he was seen by Dr. E. O. Marsigli, brother of Dr. A. H. Marsigli. Dr. E. O. Marsigli believed plaintiff had reached maximum medical improvement, with a two percent permanent impairment to his back. He was of the opinion that plaintiff could return to work.
13. Plaintiff was seen again by Dr. A. H. Marsigli on November 17, 1992. Dr. Marsigli could not find anything objectively wrong and told plaintiff he should go back to work the next day. He did not place any restrictions on plaintiff at that time. Dr. A. H. Marsigli opined that plaintiff stayed out of work longer than was necessary.
14. Dr. A. H. Marsigli's final diagnosis was that plaintiff probably had a stress fracture at L2 which eventually healed itself, and a possible incomplete stress fracture at L1 which also healed.
15. The carrier hired a private investigator to conduct surveillance of plaintiff. On July 14, 1993, private investigator Mel Palmer conducted surveillance of plaintiff in the trailer park where plaintiff lived. On the evening of July 14, 1993, Mr. Palmer observed plaintiff playing basketball outside of a trailer for approximately an hour. Plaintiff's movement included shooting the basketball, running, jumping, sitting, kneeling, and crouching. Approximately 12 minutes of this activity was recorded on videotape. The videotape shows plaintiff moving with no apparent restrictions and no apparent pain.
16. On April 25, 1994, plaintiff sought an evaluation from Dr. Theodore M. Pitts, an orthopedic surgeon at Durham Orthopedic Clinic. Dr. Pitts' examination revealed nothing objectively wrong. Dr. Pitts noted that the x-ray and bone scan were both essentially negative. The MRI was essentially normal, with the exception of a slight bulge noted at L4-5 and L5-S1. Dr. Pitts neurological exam, which included heel and toe walking, range of motion, including touching the floor, side bending, and backward bending, straight leg raising, and sensation and reflexes, was normal. The only indication that plaintiff might be in pain was plaintiff's subjective complaint. Dr. Pitts did not address keeping plaintiff out of work.
17. The greater weight of the medical evidence indicates that plaintiff may have sustained a stress fracture at L2 and an incomplete stress fracture at L1, both of which healed slowly. As of June, 1993, test results were negative, and there was no objective substantiation of plaintiff's subjective complaints of pain. Plaintiff reached maximum medical improvement and was able to return to light duty as of June 21, 1993. Plaintiff sustained a two percent permanent disability to his back.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On November 10, 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant China Inn when as he was mopping the floor, he slipped and fell, and his back locked up.
2. As a result of his injury by accident on November 10, 1992, plaintiff sustained injury to his back, specifically a stress fracture at L2 and an incomplete stress fracture at L1, which slowly healed over the next few months. As a result of his back injury, plaintiff incurred medical expenses for treatment rendered which was reasonably necessary to effect a cure or give relief or lessen his period of disability, including the treatment rendered by Dr. A. H. Marsigli and his brother at Nash Orthopedic Associates, and Dr. Lincoln at Durham-Chapel Hill Orthopedic Associates. Dr. Lincoln's treatment is approved as an independent medical evaluation of plaintiff's choice. Medical treatment rendered by Dr. Theodore M. Pitts does not appear to be reasonably necessary to effect a cure or give relief, since plaintiff had reached maximum medical improvement by June 21, 1993 and had been treated through 1993 and released by both Dr. Lincoln and the Marsigli brothers at Nash Orthopedic Associates.
3. As a result of his injury by accident of November 10, 1992, plaintiff needed a period of rest for his back to heal and was unable to work and earn wages in his employment from November 10, 1992 until June 21, 1993 when he was released to return to light duty by Dr. A. H. Marsigli. Plaintiff is entitled to temporary total disability compensation during this period at the rate of $58.67 per week from November 10, 1992 through June 21, 1993.
4. As a result of his injury by accident of November 10, 1992, plaintiff sustained a two percent permanent impairment to his back. Plaintiff is entitled to six weeks of compensation at the rate of $58.67 per week for his two percent permanent impairment to his back.
5. Defendants are entitled to a credit for overpayment of temporary total disability against any amount due for permanent impairment.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
* * * * * * * * * * *
AWARD
1. Defendants shall pay plaintiff's medical expenses incurred as a result of his injury by accident of November 10, 1992 for medical treatment as is reasonably necessary to effect a cure or give relief or lessen his period of disability, including the medical treatment rendered by Dr. A. H. Marsigli and his brother, Dr. E. O. Marsigli, and Dr. C. Robert Lincoln at Durham-Chapel Hill Orthopedic Associates.
2. Defendants shall pay plaintiff compensation at the rate of $58.67 per week for six weeks for his two percent permanent impairment of his back.
3. However, defendants are entitled to a credit against compensation due for permanent impairment for any overpayment of temporary total disability benefits.
4. Defendants shall pay the costs.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ COY M. VANCE COMMISSIONER
DCS:bjp